**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Julio Antonio Canales Blass, et al., | Case No. 5:26-cv-01819-DMK |
| Petitioners, | |
| v. | **ORDER GRANTING PETITION FOR HABEAS CORPUS** |
| Markwayne Mullin, et al., | |
| Respondents. | |

On April 13, 2026, Petitioners Julio Antonio Canales Blass, Jessica Maria Lopez Navarrete and Jose Manuel Gonzalez Lopez filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking release from custody on the grounds that their re-detention violates the Fifth Amendment Due Process Clause and Fourth Amendment protection against unreasonable seizure.  ECF 1.  Petitioners are all citizens of Nicaragua who are in immigration detention in Adelanto, California. *Id.* at ¶¶ 1, 13–15.  Respondents do not oppose the Petition. ECF 9.

For the reasons set forth below, the Court GRANTS the Petition.

## I.    BACKGROUND

The Petition alleges the following facts:

Petitioner Julio Antonio Canales Blass arrived in the United States on December 9, 2022, whereupon he was arrested by U.S. Border Patrol, granted parole, and released. *Id.* at ¶¶ 26–27. On October 15, 2025, without notice or pre-determination hearing, Petitioner Blass was re-detained and placed under removal proceedings by ICE during a regular visit at the Los Angeles ICE Field Office. *Id.* at ¶¶ 28–30, 53.

Petitioner Jessica Maria Lopez Navarrete arrived in the United States on March 20, 2022, whereupon she was detained by immigration officers, and then granted parole and released two days later. *Id.* at ¶¶ 34–35. On February 18, 2026, without notice or pre-determination hearing, Petitioner Navarrette was also re-detained and placed in removal proceedings by ICE during a scheduled check-in appointment at the Los Angeles ICE Field Office. *Id.* at ¶¶ 36–38, 53.

Petitioner Jose Manuel Gonzalez Lopez arrived in the United States on November 28, 2022, whereupon he was detained by U.S. Border Patrol, and later granted parole and released. *Id.* at ¶¶ 42–43. On November 13, 2025, without any notice or pre-determination hearing, Petitioner Lopez was re-detained and placed in removal proceedings when he went to visit the ICE Field Office in Los Angeles to notify ICE of his address change and to inquire about his reporting obligations. *Id.* at ¶¶ 45–46, 53.

Based on these allegations, Petitioners allege that their re-detention violates the Fifth Amendment Due Process Clause and Fourth Amendment right against unreasonable seizures. *Id.* at ¶¶ 48–56.

## II. __LEGAL STANDARD__

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  *See* U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  *See, e.g., Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (citation modified)); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (citation modified)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  *See, e.g., Regino v. Staley*, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (citation modified)).

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the *Mathews* test to a constitutional challenge to detention pursuant to 8 U.S.C. §

3

1226(a)).  Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see also id.* at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." *Regino*, 133 F.4th at 959–60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that

4

neither liberty nor justice would exist if it was sacrificed." *Khachatryan v. Blinken*, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## III. DISCUSSION

Here, it is undisputed that each of the Petitioners: (1) entered the United States in 2022 (ECF 1 at ¶¶ 26, 34, 42); (2) was detained at or near arrival, and subsequently released from physical custody[1] (*id.* at ¶¶ 27, 35, 43); and (3) has since demonstrated full and consistent compliance with the conditions of their release (*id.* at ¶¶ 28, 36, 44–45).

Based on these facts, the Court concludes that once each of the Petitioners was released from custody on conditions, they acquired "a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." *Pinchi*,

---

[1] While certain exhibits to the Petition indicate that each Petitioner was issued a Notice to Appear, and it was noted thereon that they were either an alien present in the United States who had not been admitted or paroled (ECF 1-2 at 8; ECF 1-2 at 29), or an arriving alien who was not admitted or paroled after inspection (ECF 1-2 at 61), the Petition is also accompanied by additional exhibits indicating that such characterizations were erroneous, and that Petitioners were, in fact, each granted parole shortly after entering the country. *See, e.g.,* ECF 1-2 at 15, 33, 56, 66, 69. Further, the Petition clearly alleges that each of the Petitioners was granted parole (ECF 1 at ¶ 2), and Respondents had an opportunity to dispute these facts or provide contrary facts, but declined to do so. ECF 9. Accordingly, Petitioners' allegations are undisputed and conceded. *See* C.D. Cal. L.R. 7-12.

792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Petitioners' liberty interest in remaining out of custody is further strengthened by the fact that they have each spent the last three years out of custody, building a life for themselves in the United States.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

Respondents do not dispute that Petitioners were detained without notice or a pre-deprivation hearing.  As such, the Court concludes that when each of the Petitioners was detained by ICE in 2025 and 2026, without notice or a pre-deprivation hearing, their procedural due process rights were violated.  *See, e.g., Mourey v. Bowen*, 2026 WL 467567, at \*4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in *Mathews*, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); *Fernandez Lopez v. Wofford*, 2025 WL 2959319, at \*6 (E.D. Cal. Oct. 17, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given that Petitioners' due process rights were violated, the Court concludes that Petitioners' release is "necessary to return [Petitioners] to the status quo." *Nazarian v. Noem*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). Here, the status quo here would be the Petitioners' release on conditions prior to their current re-detention. *See Nazarian*, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner[s'] release from custody is the appropriate remedy." *Id.*; *see Esmail v. Noem*, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The Court further concludes that due process requires notice and a pre-deprivation hearing before Petitioners may be re-detained. *See, e.g., Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. *Perez v. McAleenan*, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (citation modified)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioners are each a flight

risk or a danger to the community, and that no condition or combination of conditions could reasonably assure Petitioners' future appearance and/or the safety of the community. *See, e.g., Mourey*, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community.") (citation modified); *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Finally, the Court notes that Respondents have stated that they "are not presenting an opposition argument at this time."[2] *See* ECF 9. Accordingly, the Court finds that Respondents have consented to the relief requested by Petitioners. *See* C.D. Cal. L.R. 7-12.

---

[2] "In our adversarial system of adjudication, we follow the principle of party presentation," meaning that "in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation modified). Further, "as a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* at 375–76 (citation modified). In our adversarial system, the judge does not act as inquisitor, conducting the "legal investigation himself." *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991).

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition as follows:

1. Respondents must release Petitioners from custody within 24 hours of entry of this Order, and on each of Petitioners' prior conditions of release;

2. Respondents must return any property and paperwork seized from Petitioners in the course of their arrest and detention;

3. Respondents shall not re-detain Petitioners without providing at least seven (7) days' notice and a pre-deprivation hearing before an Immigration Judge; and

4. Respondents shall file a notice of compliance no later than **May 15, 2026**, regarding their compliance with this Order.

**IT IS SO ORDERED.**

DATED: May 13, 2026

_____
HONORABLE DIANA M. KWOK
UNITED STATES MAGISTRATE JUDGE